IN THE UNITED STATES DISCRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**TERRI NICHOLS**                                                                  **PLAINTIFF**

**V.**                                            **CIVIL ACTION NO.:** 3:20cv147-MPM-RP

**PARKER-HANNIFIN CORPORATION; AND**
**REAL TIME STAFFING SERVICES LLC D/B/A**
**RESOURCE MFG**                                                 **DEFENDANTS**

### COMPLAINT
### <u>JURY TRIAL DEMANDED</u>

**COMES NOW** the Plaintiff, Terri Nichols, by any through her counsel, Watson & Norris, PLLC, and files this action to recover damages for violations of her rights under the Americans With Disabilities Act of 1990, as amended, against Defendants Parker-Hannifin Corporation and Real Time Staffing Services LLC d/b/a Resource MFG. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

### <u>PARTIES</u>

1. Plaintiff, Terri Nichols, is an adult female citizen of Yalobusha County, Mississippi.

2. Defendant, Parker-Hannifin Corporation, is an Ohio Corporation licensed to do business in the State of Mississippi that may be served with process through its registered agent: C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

3. Real Time Staffing Services, LLC d/b/a Resource MFG, is a California Corporation licensed to do business in the State of Mississippi that may be served with process through its registered agent: Corporation Creations Network, Inc., 232 Market

1

Street, Suite 1600, Flowood, Mississippi 39232.

## JURISDICTION AND VENUE

4.     This Court has federal question jurisdiction, has personal and subject matter jurisdiction over the Defendants, and venue is proper in this Court.

5.     On August 16, 2019, Plaintiff timely filed a Charge of Discrimination with the EEOC against Parker-Hannifin Corporation and Real Time Staffing Services LLC d/b/a Resource MFG, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on February 25, 2020, against Parker-Hannifin Corporation, a true and correct copy of which is attached as Exhibit "B." On February 28, 2020, the EEOC issued a Notice of Right to Sue against Real Time Staffing, LLC d/b/a Resource MFG, a true and correct copy of which is attached as Exhibit "C." Plaintiff timely files this cause of action within ninety (90) days of receipt of her Notice of Right to Sue.

## STATEMENT OF THE FACTS

6.     Plaintiff is a 38-year old female resident of Yalobusha County, Mississippi.

7.     Plaintiff has a disability which consists of a chronic deformity to her toes for which they are held in a chronic flexion contracture.

8.     While contracted with Resource MFG, Plaintiff was assigned a position at Parker-Hannifin Corporation on April 11, 2019 as a Machine Operator.

9.     When Plaintiff began working the position at Parker-Hannifin Corporation, Plaintiff was required to wear steel toed boots.

10.    During the first month, Plaintiff's big toe had been rubbed raw by the steel toe boots creating an ulcer and the continuous wearing of the boots prevented her toe from ever being able to heal.

11. After about a month of this, Plaintiff explored using some other styles and sizes of steel toe boots but continued to have problems with her toe being aggravated.

12. Plaintiff was concerned and chose not to mention her condition to the Human Resources department of Parker-Hannifin Corporation at the time, because she worried the company would let her go, even if it was a legitimate medical issue.

13. Plaintiff was very much hoping she could persevere through the temporary phase so that she could be hired on permanently with Parker-Hannifin Corporation.

14. Plaintiff had been striving to perform her job duties very well.

15. Plaintiff's former Supervisor, Alex McCoy, had strongly recommended her, and the Parker-Hannifin Corporation Plant Manager, Jason (LNU), had noted several times what a good job Plaintiff was doing.

16. Also, Dwan Benson, an eight-year veteran Tool Setter at Parker-Hannifin Corporation, trained Plaintiff and recommended her to Mr. McCoy on several occasions.

17. By the beginning of Plaintiff's third month; however, Plaintiff was still having trouble with her toe not healing due to the chronic aggravation of the steel toe boots.

18. On May 4, 2019, Plaintiff was seen by an ER Physician, Thomas Bennet Smith, MD, at Baptist Memorial Hospital in Oxford, Mississippi.

19. Dr. Smith told Plaintiff that if she continued to wear the steel toed boots, her toe would never have a chance to heal, and she could even risk losing the toe.

20. Wanting very much to keep both the job and her toe, Plaintiff surreptitiously began wearing regular shoes (i.e., not steel toed ones) for some days at work.

21. Plaintiff knew it was a risk, but she felt stuck in a no-win situation.

22. By mid-July 2019, Plaintiff was only a couple weeks from her goal of being hired on by Parker-Hannifin Corporation.

23. On July 20, 2019, the head of Human Resources, Tamara O'Bannon, told Plaintiff that she would receive her employment application packet the following week.

24. On July 22, 2019; however, at the beginning of Plaintiff's shift, Plaintiff was approached by her Supervisor, Ty Jones, and asked about her shoes.

25. Before Plaintiff could respond, Mr. Jones came up close and stood on both of her feet to emphasize the point that she was not wearing steel toed boots.

26. Plaintiff tried to explain about her problem with her toe and what her doctor had said.

27. Plaintiff even offered to have someone bring the steel toed boots from home to her so that she could wear them, but Mr. Jones insisted she clock out and go home.

28. On July 23, 2019, before going to work, Plaintiff went to the Resource MFG office and met with Branch Manager, Simon Helps.

29. Plaintiff showed Mr. Helps her doctor's documentation from Dr. Smith at Baptist Memorial Hospital – Oxford which detailed her disability. In response, Mr. Helps gave her some steel toe slipcovers to wear at work.

30. The slipcovers are OSHA approved for wearing in the work environment in question.

31. Mr. Helps also took a picture of the steel toe slipcovers and sent it to Ms. O'Bannon.

32. When Plaintiff arrived at work that day, Plaintiff went and met with Ms. O'Bannon, and they discussed what the steel toe boots had done to Plaintiff's toe.

4

33. Ms. O'Bannon reviewed Plaintiff's doctor's documentation from Dr. Smith detailing her disability. Plaintiff explained how Dr. Smith had impressed upon her the necessity of avoiding the steel toed boots for her toe to heal and requested a reasonable accommodation.

34. Ms. O'Bannon allowed Plaintiff to wear the steel toe slipcovers that night at work.

35. The slipcovers have a taller toe box, so they do not aggravate Plaintiff's toe.

36. Ms. O'Bannon noted; however, that she doubted Parker-Hannifin Corporation would make a reasonable accommodation and allow Plaintiff to continue wearing the slipcovers.

37. Ms. O'Bannon also stated that she would have to check with Mr. Jones and Jason (LNU) to "see how they felt about Plaintiff now."

38. Ms. O'Bannon told Plaintiff that she would notify her the following day as to whether she could continue wearing the slipcovers.

39. On July 24, 2019, Mr. Helps called Plaintiff and told Plaintiff not to go to work but to call Ms. O'Bannon.

40. Plaintiff called Ms. O'Bannon immediately thereafter and was told that the situation had "escalated."

41. Ms. O'Bannon stated that Plaintiff could not wear the slipcovers again and that she could not return to the temp position.

42. Ms. O'Bannon further noted that other employees were complaining that they felt Plaintiff had received special treatment.

43. As Ms. O'Bannon continued speaking, Ms. O'Bannon confirmed to Plaintiff

that even if she had notified the company about her toe earlier in the temp assignment, she still would have been let go. The doctor's documentation would not have made any difference, according to Ms. O'Bannon.

44. Ms. O'Bannon further stated that Parker-Hannifin Corporation could not make accommodations for every employee with a medical reason to have an alternative to steel toe boots.

45. Ms. O'Bannon even stated that there were allegedly diabetic employees working at the company that they refused to accommodate.

46. On July 25, 2019, Plaintiff received word from Mr. Helps that the temporary position at Parker-Hannifin Corporation had officially ended.

47. Mr. Helps sent a text to Plaintiff requesting Plaintiff return the temporary badge she had been issued.

48. Mr. Helps noted to Plaintiff that Ms. O'Bannon had described her as a "good reliable worker," but that Parker-Hannifin Corporation had denied her employment because of the issue with her steel toed boots.

49. So, Plaintiff's temporary assignment ended and her opportunity for employment with Parker-Hannifin Corporation terminated.

50. Plaintiff was unfairly discriminated against because she was denied a reasonable accommodation for her disability – a chronic deformity of her toes.

51. Yet, Plaintiff was also unfairly treated because she never once refused to wear the steel toed boots.

52. Throughout her interactions with Mr. Jones, Mr. Helps, and Ms. O'Bannon, Plaintiff repeatedly offered that she would wear the steel toed boots if that was the only option left remaining to her.

## COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

53. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 52 above as if fully incorporated herein.

54. The Defendants violated the ADA by terminating Plaintiff's employment because of her disability and/or perceived disability.

55. The unlawful actions of the Defendants complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

56. As a direct and proximate result of Defendants' discrimination, Plaintiff suffered and continues to suffer lost earnings and benefits, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, and inconvenience.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED**, Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Reinstatement and or front pay in lieu of reinstatement;
2. Back pay;
3. Lost benefits;
4. Compensatory damages;
5. Punitive damages;
6. Pre-judgment and post-judgment interest;
7. A tax gross-up and all make whole relief;
8. Attorney's fees;
9. Costs and expenses; and
10. Any other relief to which she may be properly entitled under the ADA.

7

THIS the 22nd day of May 2020.

                                        Respectfully submitted,

                                        TERRI NICHOLS, PLAINTIFF

                                        By: /s/Louis H. Watson, Jr.
                                              Louis H. Watson, Jr. (MB# 9053)
                                              Nick Norris (MB# 101574)
                                              Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
1880 Lakeland Drive, Suite G
Jackson, Mississippi 39216-4972
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
louis@watsonnorris.com
nick@watsonnorris.com